United States Courts
Southern District of Texas
FILED

JUL 15 2015

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **Criminal No. H-** |
| | § | |
| **v.** | § | |
| | § | 15 CR 377 |
| **MARIAN ANNETTE CLUFF** | § | |
| **ALSIE CLUFF, JR.** | § | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

## INTRODUCTION

**At all times material to this indictment:**

### Defendants

1. **Marian Annette Cluff** ("**Annette Cluff**") was a resident of Houston, Texas. She was married to Alsie Cluff, Jr. They have two children, Alsie Cluff, III and Melissa Cluff. **Annette Cluff** was the founder and former Superintendent of The Varnett Schools, Inc., doing business as The Varnett Public School ("VPS"), a Texas State Open Enrollment Charter School. **Annette Cluff** was also the President and 100 percent shareholder of Varnett Academy, Inc., a Texas for-profit corporation. And she was the

1

President and 100 percent shareholder of Texas School Bus Company, Inc., a Texas for-profit corporation.

2. **Alsie Cluff, Jr. ("Alsie Cluff")** was a resident of Houston, Texas, and he was the husband of **Annette Cluff** and a member of the Board of Directors of The Varnett Public School. **Alsie Cluff** was the Facilities and Operations manager of the school. He also was vice president and treasurer of Varnett Academy Inc. and he was the secretary and treasurer of Texas School Bus Company, Inc.

### Schools and Related Companies

3. **The Varnett Public School ("VPS")** began operation in 1998, as a State of Texas Open Enrollment Charter School. **VPS** had three (3) campuses located in the Houston area with a student enrollment of approximately 1,800 for all three campuses. **VPS** was approved by the Texas Education Agency to educate children from pre-kindergarten to the sixth (6th) grade.

4. **Varnett Academy, Inc**. was a Texas for-profit corporation in which Annette Cluff owned 100 percent of the shares. Varnett Academy, Inc. was a real estate company which owned two of the three VPS campuses. The company also leased the land and buildings on two VPS campuses on an annual basis. Varnett Academy, Inc. eventually sold the two campus properties to VPS at a substantial financial gain.

5.   **Texas School Bus Company, Inc**. was owned by **Annette Cluff**, and **Annette Cluff** in her role as Superintendent of VPS, contracted with that same Bus Company to provide daily transportation services to students at all three (3) campuses.  The Bus Company also transported students from the three campuses on numerous field trips during the school year. In May 2012, Texas School Bus Company, Inc. sold all of its assets (primarily its school buses) to VPS for a substantial financial gain.

### Federal and State Agencies

6.   **United States Department of Education**– The primary functions of the Department of Education are to "establish policy for, administer and coordinate most federal financial assistance to education, collect data on US schools, and to enforce federal educational laws regarding privacy and civil rights." The Department of Education does not establish schools or colleges.   The Office of the Inspector General conducts audits and investigations in connection to the Department's programs.

7.   **Texas Education Agency ("TEA"),** under the leadership of the commissioner of education, carries out the following functions:

- Administers the distribution of state and federal funding to public schools;

- Administers the statewide assessment program and accountability system;

- Provides support to the State Board of Education (SBOE) in the development of the statewide curriculum;

- Assists the SBOE in the instructional materials adoption process and managing the instructional materials distribution process;

- Administers a data collection system on public school information;

- Performs the administrative functions and services of the State Board for Educator Certification;

- Supports agency operations, including carrying out duties related to the Permanent School Fund; and

- Monitors for compliance with certain federal and state guidelines.

The TEA operational costs are supported by both state and federal funds.

## **COUNT ONE**

### **(Tax Conspiracy, 18 U.S.C. § 371)**

8.   The Grand Jury realleges and incorporates by reference herein, as if fully set forth below, paragraphs one through seven of the Introduction to the Indictment.

9.    Beginning in or about January 2007 and continuing to approximately April 15, 2015, in the Houston Division of the Southern District of Texas and elsewhere,

**MARIAN ANNETTE CLUFF**

**and**

**ALSIE CLUFF, JR.**

Defendants herein, did unlawfully, willfully, and knowingly, conspire, combine, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the United States Department of the Treasury in the ascertainment, computation, assessment, and collection of the revenue, namely income taxes.

**Manner and Means of the Conspiracy**

The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

10.    It was part of the conspiracy that the defendants, Annette Cluff and Alsie Cluff would and did impede, impair, obstruct, and defeat the lawful government functions of the Internal Revenue Service of the Treasury Department (1) in its collection of income taxes owed by the Cluffs for

their 2008, 2009, 2010, 2011, 2012, 2013, and 2014 U.S. Individual Income Tax Years and (2) in its assessment of income taxes owed by the Cluffs for their 2008, 2009, 2010, 2011, 2012, 2013, and 2014 U.S. Individual Income Tax Years.

11.   It was further part of the conspiracy the defendants would and did set up "off-books accounts" separate from the true accounts of The Varnett Public School and through which they funneled money which should have been used for the operation and function and benefit of the school; instead, the money was used exclusively for the personal use and benefit of the defendants.

12.   It was further part of the conspiracy that the defendants would and did utilize an assumed name of "The Varnett School" to open four bank accounts in that name to create four "off-books accounts" separate and apart from the accounts of "The Varnett Public School" bank accounts.

13.   It was further part of the conspiracy that the defendants would and did use the "off-books accounts" under the guise of The Varnett School to disguise and conceal in excess of $2.4 million intended for use and operation of The Varnett Public School for their personal use and benefit.

14.   It was further part of the conspiracy the defendants would and did conceal the "off-books accounts" from everyone involved with VPS finances,

including the school's office manager, the school's external accountant and their income tax preparer.

15. It was further part of the conspiracy that the defendants from 2007 through January 2014, would and did divert and deposit approximately $2.4 million into the "off-books accounts" and approximately $135,961.94 obtained through deceit and manipulation from the Board of Directors of the Varnett Public School.

16. It was further part of the conspiracy the defendants would and did deposit approximately $1 million which consisted of "money orders" paid to VPS by parents of the students to pay for school field trips during the academic year. The defendants required the parents to provide only money orders to pay for the field trips. If a student's family could not afford to pay the field trip fee, the defendants required the child to stay at the school, often in tears, while the remainder of the children went on the field trip.

17. It was further part of the conspiracy that the defendants would and did compel VPS's building maintenance and landscaping contractor to submit false invoices to VPS for non-existent goods and services. VPS paid invoices to the contractor in excess of $93,501.15, and defendant Annette Cluff instructed the contractor to return the money to her by writing checks

in her personal name, which she deposited into a personal bank account. She did not report the income to the IRS.

18. It was part of the conspiracy that the defendant Annette Cluff would and did attempt to obstruct the government's investigation by telling the contractor to make a false statement to the FBI by saying that the money was a loan that she repaid in cash.

19. It was further part of the conspiracy that the defendant Alsie Cluff would and did instruct the landscape contractor to dismiss a subcontractor, and to pay the amount VPS owed the contractor to defendant Annette Cluff for work Alsie Cluff completed.  The contractor wrote a check from his bank account to Annette Cluff for $15,646.00 and she deposited the check in her personal bank account.  She did not report the income to the IRS.

20. It was further part of the conspiracy that the defendant Annette Cluff would and did tell the landscape contractor to write a check to her for $5,990.00 that he received from VPS for the replacement and removal of dead trees on one of VPS's campuses.  Annette Cluff deposited the funds in her personal bank account.  She did not report the income to the IRS.

21. It was further part of the conspiracy that the defendants would and did fail to disclose to the IRS the deposits of diverted funds into the "off-books accounts."

22. It was further part of the conspiracy that the defendants would and did use the money from the "off-books accounts" to fund their lavish lifestyle of expensive homes, vehicles, around-the-world vacations, expensive clothes, jewelry, and other luxuries.

### Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Houston Division of the Southern District of Texas and elsewhere:

23. On or about November 20, 2001 in Harris County, Texas, Annette Cluff and Alsie Cluff filed a certificate of operation under assumed name for The Varnett School, with Varnett Academy, Inc. as the owner of the business.

24. On or about March 10, 2004 in Bellaire, Texas, Annette Cluff and Alsie Cluff repurposed Community National Bank account number x5975 in the name of Varnett Academy, Inc. DBA Willow Creek Child Care Center by changing the DBA to The Varnett School, with both of them as signers on the account.

25. From in or before January 2007 to in or about May 2012, Annette Cluff and Alsie Cluff made deposits of funds intended for VPS into Community National Bank account number x5975 in the name of Varnett Academy,

Inc. DBA The Varnett School, and they made withdrawals from the account for their personal use.

26. On or about April 15, 2008, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2007, that they signed under the pains and penalties of perjury, that failed to report income that they received during the year.

27. On or about July 11, 2008, Annette Cluff filed with the IRS a false Return of Organization Exempt From Income Tax, Form 990, for The Varnett Schools, Inc.'s tax year ending August 31, 2007, that she signed under the pains and penalties of perjury, that falsely reported expenses which it did not incur.

28. On or about November 3, 2008, Annette Cluff and Alsie Cluff opened Sterling Bank account number x1489 in the name of Varnett Academy, Inc. DBA Varnett School with both of them as signers on the account.

29. From November 2008 to January 2009, Annette Cluff and Alsie Cluff made deposits of funds intended for VPS into Sterling Bank account number x1489 in the name of Varnett Academy, Inc. DBA Varnett School, and they made withdrawals from the account for their personal use.

30. On or about February 9, 2009, Annette Cluff filed with the IRS a false Return of Organization Exempt From Income Tax, Form 990, for The

Varnett Schools, Inc.'s tax year ending August 31, 2008, that she signed under the pains and penalties of perjury, that falsely reported expenses which it did not incur.

31. On or about October 9, 2009, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2008, that they signed under the pains and penalties of perjury, that failed to report income that they received during the year.

32. On or about February 19, 2010, Annette Cluff filed with the IRS a false Return of Organization Exempt From Income Tax, Form 990, for The Varnett Schools, Inc.'s tax year ending August 31, 2009, that she signed under the pains and penalties of perjury, that falsely reported expenses which it did not incur.

33. On or about April 15, 2010, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2009, that they signed under the pains and penalties of perjury, that failed to report income that they received during the year.

34. On or about July 31, 2011, Annette Cluff and Alsie Cluff, jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2010, that they signed under the pains and penalties of perjury, that failed to report income that they received during the year.

35. On or about April 15, 2012, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2011, that they signed under the pains and penalties of perjury, that failed to report income that they received during the year.

36. On or about April 15, 2013, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2012, that they signed under the pains and penalties of perjury that failed to report income that they received during the year.

37. On or about March 6, 2013, Annette Cluff and Alsie Cluff opened Comerica Bank account number x9815 in the name of Varnett Academy, Inc. DBA The Varnett School with both of them as signors on the account.

38. From in or about March 2013 to January 2014, Annette Cluff and Alsie Cluff made deposits of funds intended for VPS into Comerica bank account x9815 in the name of Varnett Academy, Inc. DBA The Varnett School, and they made withdrawals from the account for their personal use.

39. On or about October 15, 2014, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Individual Income Tax Return, Form 1040, for the tax year 2013, that they signed under the pains and penalties of perjury that failed to report income that they received during the year.

40. On or about April 15, 2015, Annette Cluff and Alsie Cluff jointly filed with the IRS a false U.S. Income Tax Return, Form 1040, for the tax year 2014, that they signed under the pains and penalties of perjury that failed to report that they received during the year.

In violation of Title 18, United States Code, Section 371 and 2.

## COUNTS TWO through ELEVEN

### (Mail Fraud, 18 U.S.C § 1341)

1. The Grand Jury realleges and incorporates by reference, as though set forth in full herein, the allegations set forth in paragraphs one through forty of Count One of this Indictment.

### The Scheme and Artifice to Defraud

2. From in or about January 2007 and continuing until on or about December 31, 2014, in the Houston Division of the Southern District of Texas and elsewhere,

### MARIAN ANNETTE CLUFF

### and

### ALSIE CLUFF, JR.

defendants herein, did knowingly execute and attempt to execute a scheme and artifice to defraud and for obtaining money and property amounting to

approximately $2,616,278.14 by means of material false and fraudulent pretenses, representations and promises, as more fully set forth below.

**The Method and Means of the Scheme and Artifice to Defraud**

3.   The scheme and artifice consisted essentially of the defendants setting up "off-books accounts" separate from the true accounts of The Varnett Public School and through which they funneled money which should have been used for the operation and function and benefit of the school; instead, the money was used exclusively for the personal use and benefit of the defendants.

4.   It was part of the scheme and artifice to defraud that the defendants would and did divert and deposit approximately $2,616,278.14 of funds for VPS into off-books accounts and other bank accounts created by them.

5.   It was further part of the scheme and artifice to defraud that the defendants would and did deposit into the off-books accounts over $1 million of the $2.6 million in funds from money orders submitted by parents of students enrolled in VPS to pay for school field trips and other school related activities.

6.   It was further part of the scheme and artifice to defraud that the defendants would and did divert and deposit into the off-books

accounts funds from VPS fundraisers such as chocolate sales, book fairs, and school carnivals.

7.  It was further part of the scheme and artifice to defraud that the defendants would and did divert and deposit into the off-books accounts funds received from utilities companies, the U.S. Treasury, and other agencies, which were intended for the operation of VPS.

8.  It was further part of the scheme and artifice to defraud that the defendants would and did divert and deposit into the off-books accounts funds received from Comcast and other companies for computers intended for the benefit of VPS students.

### Execution of the Scheme and Artifice

On or about the dates set out in the counts below for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, in the Southern District of Texas and elsewhere,

### MARIAN ANNETTE CLUFF

### and

### ALSIE CLUFF, JR.

defendants herein, did knowingly cause to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, and

caused to be deposited and sent and delivered according to the directions thereon, and at the place at which it is directed to be delivered by the person (or common carrier) to whom it is addressed, the following mail matter:

| Count | Date | Mail Matter |
|-------|------|-------------|
| Two | 2/3/2011 | A check from Verizon Wireless in the amount of $20,858.63. |
| Three | 1/31/2011 | A check from AT&T in the amount of $15,034.59. |
| Four | 1/31/2011 | A check from AT&T in the amount of $16,593.84. |
| Five | 2/17/2011 | A check from Verizon Wireless in the amount of $9,299.60. |
| Six | 2/18/2011 | A check from Comcast in the amount of $11,110.00. |
| Seven | 2/18/2011 | A check from Comcast in the amount of $43,408.13. |
| Eight | 12/16/2011 | A check from AT&T in the amount of $21,336.43. |
| Nine | 1/18/2012 | A check from Advanced Network Systems in the amount of $5,189.14. |

| Ten | 1/17/2012 | A check from AT&T in the amount of $12,512.17. |
| Eleven | 2/7/2012 | A check from the U.S. Treasury in the amount of $8,684.15. |

In violation of Title 18, United States Code, Section 1341 and 2.

## COUNTS TWELVE through EIGHTEEN

### (Tax Evasion-Evasion of Assessment-26 U.S.C § 7201)

1. The Grand Jury realleges and incorporates in these Counts Twelve through Eighteen all of the allegations in paragraphs One through Forty and paragraphs One through Eight of Counts Two through Eleven above.

2. On or about the dates below, in the Houston Division of the Southern District of Texas and elsewhere,

**MARIAN ANNETTE CLUFF**

**and**

**ALSIE CLUFF, JR.**

defendants herein, did willfully attempt to evade and defeat a large part of the income tax due and owing by them to the United States of America for the following calendar years by preparing and causing to be prepared, and by signing and causing to signed, false and fraudulent joint U.S. Individual

Income Tax Returns, IRS FORMS 1040, for each of the years below, which were filed with the Internal Revenue Service on or about the following dates, wherein defendants claimed the following approximate amounts of taxable income and income taxes due and owing, whereas, as defendants then and there well knew, defendants in fact had the following approximate true amounts of taxable income for each year, upon which the following approximate of income taxes were due and owing, and defendants still owe the following additional income tax due for each of the following years:

| Count | Year | Date Filed | Claimed Taxable Income | True Taxable Income | Claimed Tax Owed | True Tax Owed | Additional Tax Due |
|-------|------|-----------|------------------------|---------------------|------------------|---------------|--------------------|
| Twelve | 2008 | October 9, 2009 | $1,390,036 | $1,631,087 | $328,026 | $405,915 | $77,889 |
| Thirteen | 2009 | April 15, 2010 | $1,093,328 | $1,446,876 | $345,048 | $475,269 | $130,221 |
| Fourteen | 2010 | July 31, 2011 | $1,327,194 | $1,552,507 | $434,690 | $513,549 | $78,859 |
| Fifteen | 2011 | April 15, 2012 | $1,145,893 | $1,591,010 | $370,585 | $526,376 | $155,791 |
| Sixteen | 2012 | April 15, 2013 | $3,878,580 | $4,032,514 | $791,924 | $840,313 | $48,389 |
| Seventeen | 2013 | October 15, 2014 | $411,048 | $1,066,809 | $130,054 | $374,198 | $244,144 |
| Eighteen | 2014 | April 15, 2015 | $292, 466 | $318,888 | $79,980 | $88,475 | $8,495 |

In violation of Title 26, United States Code, Section 7201.

## COUNT NINETEEN

### (Obstruction of Justice, 18 U.S.C. § 1512(b)(3))

On or about November 6, 2013, in the Houston Division of the Southern District of Texas, the defendant,

## MARIAN ANNETTE CLUFF

did knowingly attempt to corruptly persuade D.A., a Cooperating Individual known to the Grand Jury, with the intent to prevent the truthful communication to FBI Agents of information relating to the commission of a Federal Offense, to wit: the defendant instructed D.A. to tell FBI Special Agents that false invoices created by the defendant of approximately $115,137.15, and paid by The Varnett Public School to D.A. allegedly for work done, and she directed D.A. to pay said amount back to her, was for a loan, and that defendant paid D.A. back in cash, when in truth and in fact as the defendant then well knew, the payments were used for her own personal use and not for the benefit of The Varnett Public School.

In violation of 18, United States Code, Section 1512(b)(3).

## NOTICE OF CRIMINAL FORFEITURE
### (28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C))

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendants,

## MARIAN ANNETTE CLUFF

**and**

## ALSIE CLUFF, JR.

that in the event of conviction of the offenses charged in Counts Two through Eleven of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## Money Judgment

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture. That amount is estimated to be, but is not limited to, approximately $2,616,278.14 in United States dollars.

## Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the total value of such property pursuant to Title 21, United States

Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).


A TRUE BILL:

Original Signature on File

Foreperson of the Grand Jury


KENNETH MAGIDSON
UNITED STATES ATTORNEY


Quincy L. Ollison
Assistant United States Attorney