IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-15-377-1 |
| | § | CIVIL ACTION NO. H-19-2214 |
| MARIAN ANNETTE CLUFF, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Marian Annette Cluff's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 221),[1] and the United States' Memorandum in Opposition. (Document No. 224). After reviewing Movant's § 2255 Motion, the Government's Memorandum in Opposition, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Marian Annette Cluff's § 2255 Motion to Vacate, Set Aside, or Correct Sentence be DENIED.

## I.     Procedural History

Movant Marian Annette Cluff ("Cluff") who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255.  This is Cluff's first attempt at § 2255 relief.

On July 15, 2015, Cluff and her husband, Alsie Cluff, Jr., were charged in a 19-count

---

[1] Marian Annette Cluff's  Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-19-2214 and at Document No. 221 in Criminal Action No. H-15-377. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

Indictment.  (Document No. 1).  Cluff was charged with one count of conspiracy to commit tax

evasion, in violation of 18 U.S.C. §§ 371 and 2 (Count1), ten counts of mail fraud in violation of 18

U.S.C. §§ 1341 and 2 (Counts 2-11); six counts of tax evasion in violation of 26 U.S.C. § 7201

(Counts 12-18), and one count of obstruction of justice in violation of 18 U.S.C. § 1512(b)(3) (Count

19).  On August 25, 2017, Cluff pleaded guilty to Counts 1 and 2 pursuant to a written Rule

11(c)(1)(A) and Rule 11(c)(1)(C) Plea Agreement. (Document No. 46; Transcript of Rearraignment,

Document No.76). The written Plea Agreement is signed by Cluff and was thoroughly discussed at

the Rearraignment.  The signed written Plea Agreement makes clear that Cluff "is pleading guilty

freely and voluntarily because she is guilty" (Document No.46, ¶ 27), and contains an Addendum,

also signed by Cluff, that states that she: "consulted with my attorney and fully understand all my

rights with respect to the Criminal Indictment pending against me.  My attorney has fully explained,

and I understand all my rights which may apply in my case.  I have read and carefully reviewed

every part of this Plea Agreement with my attorney.  I understand this Agreement and I voluntarily

agree to its terms."  (Document No. 46, p. 20).  Moreover, the transcript of the Rearraignment

hearing confirms that Cluff understood the general terms of the plea agreement, the charges against

her, the elements of the crimes, the rights she would give up if she pleaded guilty, the possible

penalties, the sentencing process, that she had discussed the plea agreement with her attorney and

that she understood the terms, and that she was waiving both her right to appeal and to collateral

review except for claims of ineffective assistance of counsel. (Document No. 76, p. 8-30).  With

respect to the sentence, the parties agreed to a maximum sentence of up to 120 months.  The written

Plea Agreement further provided that Cluff could seek a sentence below that maximum.  Cluff and

her husband also agreed to pay approximately $4,443,755.69 as restitution, and that their property

2

located at 3430 South Parkwood Drive, Houston, Texas would be sold.  (Document No. 46, p. 2, 13-15).  Cluff further agreed "not to dispose of any assets or take any action that would effect a transfer of property in which she has an interest, unless Defendant obtains the prior written permission of the United States."  (Document No. 46, p. 13).

The record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial.  (Document No. 76, p. 30-35).   In response, Cluff confirmed the accuracy of the summary and her role in the offense. (Document No. 76, p. 35).  The Prosecutor summarized the facts as follows:

> The United States would prove the following facts, Your Honor: That the Defendant Marian Annette Cluff is the former founder and former superintendent of the Varnett Public School, a Texas State Open Enrollment Charter School that began operating in 1998 in Houston, Texas.  The defendants are married.
>
> Varnett Public School consisted of three campuses located in impoverished neighborhoods in the Houston area with a student population in excess of 1,662 students.  It was the largest charter school for elementary education in Texas, and the school received from 9 million to 11 million dollars annually in the – from the Department of Education and the Texas Education funds.
>
> The Defendant Marian Annette Cluff was 100 percent shareholder or owner of the Varnett Academy, Incorporated, a real estate company.  The Varnett Academy, Inc., formally owned the property on which two of Varnett Academy, Inc., leased the land and buildings of both properties to Varnett Public School on an annual basis.  Varnett Academy, Inc., sold the properties to Varnett Public Schools for a substantial gain.
>
> Alsie Cluff was the vice president and treasurer of Varnett Academy.  In addition, Marian Annette Cluff was the president and 100 percent shareholder of Tex–of the Texas School Bus Company.  Varnett Public Schools contracted with the bus company to provide daily bus transportation for students to and from school at its three campuses and transportation for field trips.  Alsie Cluff, Jr. Was the secretary and treasurer of the bus company.
>
> From January 2007 to April 2014, the defendants diverted and deposited $2,600,016–200–I'm sorry, $2,216,278.14 of Varnett Public Schools' funds into four off-book accounts, and other accounts they controlled and used for their personal

3

benefit. Over one million dollars of the Varnett Public Schools' funds the defendants diverted into the off-books accounts came from money orders submitted by the parents of students to pay for school field trips. The defendants also diverted money from Varnett Public Schools' fund raisers such as chocolate sales, book fairs, school carnivals, and dress-down days where students would pay for the privilege of wearing casual attire to school instead of uniforms.

The defendants further diverted funds into the off-books accounts from vendor-refund checks, federal-subsidy checks, insurance-claims checks, federal and state-tat-refund checks, and checks from school donations. Most of the checks were mailed to Varnett Public Schools by the vendors' insurance companies and the federal and state government.

On or about February 3rd, 2011, Varnett Public Schools received by mail a check from Verizon–Verizon Wireless in the amount of $20,858.63 as a refund for services provided to Varnett Public Schools. The defendants diverted that money into the off-books accounts for their personal benefit.

The defendants received the off-books accounts from everyone else involved in Varnett Public School financing—I'm sorry, concealed the off-books accounts from everyone else involved in Varnett Public School financing, including the Varnett Public School office manager, external accounts, and their income tax preparer.

Varnett Public Schools' business manager collected the money orders and cashier's checks that the school received for field trips and fund raisers and gave them to the Defendant Alsie Cluff. Alsie Cluff would organize the money orders and endorse them. Both defendants made bank deposits into the off-books accounts, but 80 percent of the deposits were made by Alsie Cluff, Jr.

The defendants used two Houston area accounting firms to prepare their tax returns and business tax returns for Varnett Public Schools. The accounting firms performed monthly bank reconciliations and entered deposits directly from the bank statements that were maintained and provided by the firms—the the firms by Marian Cluff.

The accounting firms did not know about the existence of the off-books accounts. The Defendant Marian Cluff never provided any money orders payable to Varnett Public Schools for field trips or fund raisers, and the firm—and the accounting firms never entered such deposits on Varnett Public School books.

The accounting firms prepared the defendants' income tax return on Forms 1040 for the years 2007 to 2014 as mentioned above. The Defendant Marian Cluff was the main person of contact for the preparation of the tax returns.

Defendant Marian Cluff did not provide the accounting firms with information that

4

related to the funds deposited in the off-books accounts, and the income from those accounts was not reflected on their income tax returns.  In total, the defendants failed to report $302,680 of income in tax year 2007; $238,665 of income for tax year 2008; $350,048 of income for tax year 2009; $225,313 for income tax–for tax year 2010; $445,117 of income for tax year 2011; $153,934 of income for tax year 2012; $634,968 of tax–for tax year 2013; and $24,272 for tax year 2014.

The additional tax due and owing resulted from the under reporting of income by the defendants on their Form 1040 is $108,057 for year 2007; $77,889 for 2008; $130,221 for 2009; $78,859 for 2010; $155,791 for 2011; $48,389 for 2012; $244,144 for 2013; and $8,495 for 2014 for a total of $851,845.  The IRS assessed penalties for tax years 2007 to 2014 at $638,883.75, and the IRS added interest for tax years 2007 to 2014, which is $336,748.80.

The tax returns for each year did not include money the defendants diverted from Varnett Public School and deposited into the off-books accounts for their personal use.  The defendants took steps with the accounting firms, as mentioned above, to conceal the money they diverted from Varnett Public School, and their receipt of the above mentioned income.

(Document No.76, p. 30-35).  The record further shows that Cluff described her role in the offense

as follows:

The Court: All right.  Ms. Cluff, can you tell me in your own words what it is you did to commit the crimes charged against you in Counts 1 and 2 of the Indictment?

Defendant Marian Cluff: I diverted those funds into those accounts, and I did not report it to my accountant.

The Court: And—but basically what Mr. Ollison says he thinks he can prove; is that correct?

Defendant Marian Cluff: That is correct.

(Document No. 76, p. 35).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared.  (Document

Nos. 57, 59).  Cluff filed written objections to the PSR (Document No. 53).[2]  Cluff had a base

---

[2] The record shows that Cluff raised several objections to  calculation of her advisory guideline sentence.  Cluff objected to the two level enhancement for a misrepresentation that she

offense level of 7. The offense level was increased by 16 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(I), because the intended loss of $2,626,278.14 was more than $1.5 million but less than $3.5 million.  Because the offense involved the misrepresentation by Cluff, acting on behalf of a Varnett Public School, an educational agency, the offense level was increased by two pursuant to U.S.S.G. § 2B1.1(b)(9)(A).   Because the offense involved sophisticated means, and Cluff intentionally engaged in or caused the conduct constituting sophisticated means, the offense level was increased by two levels pursuant to U.S.S.G. § 2B1.1(b)(10)(C).  Because Cluff was an organizer or leader in the criminal activity, the offense level was increased by two levels pursuant to U.S.S.G. § 3B1.1(c).   Because Cluff abused her position of trust, pursuant to U.S.S.G. § 3B1.3, the offense level was increased by two levels. Finally, because Cluff willfully obstructed or impeded the administration of justice, the offense level was increased by two levels pursuant to U.S.S.G. § 3C1.1. With an adjusted offense level of 33, and with a criminal history category of I, Cluff had an advisory guideline sentencing range of 135 to 168 months. As discussed above, the written Rule 11(c)(1)(c)

---

was acting on behalf of an educational agency.  She also objected to two level enhancement based on the offense using sophisticated means.  Cluff further objected to the two level enhancement for being an organizer or leader.  Finally, she argued that her offense level should be reduced by three levels for acceptance of responsibility.  Cluff argued that she had not obstructed justice, and in any event, should be given the sentencing reduction based on her admitting to the conduct charged in the Indictment, stepping down from the school, and not accepting a severance, despite her employment contract providing for such payment.  Cluff also pointed to the attempt to sell her home, and placing money in the registry of the court for restitution.  Lastly, Cluff objected to the two level enhancement for obstruction of justice because she "never instructed Mr. Alexander nor anyone else to falsify information to the FBI. There is not here, not can there be, such a showing." (Document No. 53, p. 6).  The Government responded to the objections. With respect to Cluff's objections relating to obstruction of justice enhancement and acceptance of responsibility, which were inextricably intertwined, the Government attached the transcript of the phone conversation between Cluff and Dwayne Alexander, in which Cluff instructed him to submit false invoices on three occasions, and for which Cluff received three checks from Dwayne Alexander's company, Unicorn, totaling $100,000.00.  The activities occurred before Cluff was indicted.  (Document No. 56).

Plea Agreement provided for a sentence of no more than 120 months, and that in the event, the Court declined to accept the agreement, that Cluff would be allowed to withdraw her guilty plea. The record reflects that prior to sentencing, Cluff submitted a Sentencing Memorandum, in which she argued for a sentence in the range of 36 to 48 months.  (Document No. 73).  Cluff argued that a sentence in this range was appropriate given the approximately $1.6 million in restitution she had already paid with more to follow; her advanced age; her health; her lack of a criminal record; that students benefitted from over 30 years in education at the Academy; and her generosity to the community.

On, June 15, 2018, Cluff was sentenced to a total term of imprisonment of 120 months, to be followed by three year concurrent terms of supervised release, a fine of $295,596.00, a $200.00 special assessment, and restitution totaling $4,739,551.69.  (Transcript of Sentencing Hearing, Document No. 90, p. 154-160).  In imposing Cluff's sentence, the Court stated, in pertinent part:

> Okay.  Well, I must say that I find this case to be extremely Dickensian.  It's almost–some time you read– if you read Dickens, you think there's no way anybody could be that mean, and it's like it's right here.  I mean, it's just—it's astounding to me that these people could do so much good by founding this school and running it right and all that kind of thing and then on the side, kind of in the shadows, just stealing little teeny-tiny bits of money, just grinding away and pinching and stealing.  And I have to think that there's got to be some kind of psychological problem going on here, not insanity, but something is going on, and I don't know what it is.  You know, my – the lesser– my lesser person is thinking in terms of revenge, and I don't want to–revenge is not what's going on here.  It's really justice, I think, justice.

>           \*                  \*                \*

> And that's what the guidelines are for.  That's what plea bargaining is for.  The guidelines give you a range.  You bargain around that range, and especially 11(3)(c), where you come up with a sentence that you agree on.  I mean, I can't be said to be vengeful for giving you the sentences that you agreed to.

>           \*                  \*                \*

No, no.  You're right.  You're right.  You're exactly right.  But you had to know or think at least that somebody—some judge, that I or some other judge would go the whole hog, you know.  You've got to– and that was what you were — you had to have that in the back of your mind, that that's what somebody is going to do.  And I'm just—I just—I think Mr. Ollison is right and I'm certainly not judging anybody in terms of their morals, but it's just got to be giving into pride and greed, it's got to be.  I mean, it was nice being head of a school, the husband of the head of a school, in charge of the facilities and everybody looked up to you and everybody adored you and you doled out things to people because you were great people, and that's what was going on in your head.  You were thinking, I am really like the lord and lady of the manor here.  But you had to get it by stealing it.  And it's just—it's just—it's just not just that you shouldn't have to pay the price

So, Marian Annette Cluff is before the Court for sentencing after entering a plea of guilty to a two count criminal indictment for conspiracy to commit tax evasion, aiding and abetting and mail fraud, aiding and abetting, pursuant to a written Rule 11(c)(1)(c) plea agreement.

Between 2007 and 2014 Marian Cluff was the founder, a board member, and former superintendent of VSP when she engaged in an ongoing conspiracy with Alsie Cluff, Jr., her husband, and others, to divert funds intended for VP–I said VSP.  I mean VPS–for VPS into personal accounts for her personal gain.  Marian and Alsie Cluff, Jr., changed personal bank accounts from their original names to names very similar to VPS to facilitate or conceal the diversion of funds in this case.  Further, Marian and Alsie Cluff, Jr., required the field trip and other funds from the students at VPS to be paid in the form of money orders only.

At least $2,616,278.14 in VPS funds were diverted into four personal accounts controlled by Marian and Alsie Cluff, rather than paid to VPS for the operation of the school and its educational programs.  At least $1,245,678.88 of those VPS funds were derived directly from the VPS student population exceeding 166—sorry, 1,662 students, which was composed of economically disadvantaged children in the Houston area.

Marian Cluff failed to report the $2,616,278.14 in diverted funds on her personal income tax returns she had prepared for tax years 2007 to 2014, resulting in unpaid taxes totaling $851,845; penalties of [$]638,883.75; and interest of [$]336,748.80.  When the diversion of funds was detected, Marian Cluff took steps to conceal the funds from investigators and instructed Dewayne Alexander to lie to agents about the source of the funds that Alexander paid to her as part of the scheme.

Marian Cluff is deemed to have abused a position of trust as a board member and former superintendent of Varnett Public School.  Marian Cluff is considered to be an organizer or leader in criminal activity and is considered to have obstructed

justice by instructing Alexander to make false statements to investigating agents.

This plea agreement included a specific sentence.  Rule 11(c)(1)(c), the Court may accept the agreement if the Court is satisfied that, one, the agreed sentence is within the applicable guidelines range or, two, that the agreed sentence departs from the applicable guideline range for justifiable reasons and those reasons are specifically set forth in writing and in the statement of reasons or judgment and commitment order.  And I believe that I've already said that, but in order to make this formal, the agreed sentence departs from the applicable guideline range, but I believe that given the circumstances of this case, a sentence at the agreed level is sufficient but not greater than necessary to satisfy the statute 3553(a).

(Document No. 90, p. 150-154).  Judgment was entered on June 28, 2018.  (Document No. 80).  Her

conviction became final on or before July 12, 2018. *See* Fed. R. App. Pro. 4(b)(1)(A)(i)(period of

14 days when do direct appeal filed).  On June 18, 2019, Cluff timely filed the instant § 2255

motion.  (Document No.221).

## II.  Discussion

Cluff raises two grounds for relief.  First, she claims that her guilty plea was not knowing

and voluntary because she believed that by pleading guilty she would be shown leniency at

sentencing, i.e, the three level reduction for acceptance of responsibility.  In support of this

argument, Cluff points to her "voluntarily surrendered substantial financial assets." (Document No.

221-1, p. 3).  She further points to her notifying of her intent to plead guilty and cooperating in the

recovery of assets.  According to Cluff, the government breached the plea agreement at sentencing

by arguing that she obstructed justice.  Cluff maintains the information contained in the PSR was

not reliable, and in any event, such actions were outweighed by her "substantial voluntary restitution

payment." (Document No. 221-1, p. 4-5).  The Government counters that Cluff's guilty plea was

knowing and voluntary, and, that as part of the written plea agreement, Cluff waived her right to

collaterally attack her conviction.  The Magistrate Judge agrees.

9

A defendant's waiver of her statutory right to collaterally challenge her conviction with a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of her right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of a § 2255 motion). The Fifth Circuit has held that a § 2255 waiver does not preclude review where there is an ineffective assistance of counsel claim where the claimed ineffective assistance directly affected the validity of the waiver in the plea itself. *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). The Fifth Circuit has further held that a § 2255 waiver does not preclude a review where there is a claim that the sentence exceeds the statutory maximum. *United States v. Hollins*, 97 Fed. App'x 477, 479 (5th Cir. 2004). In the context of the plea agreement, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005). "[T]he better practice is to ask expressly if the defendant read and understood the plea agreement." *United States v. Narvaez*, 452 Fed. App'x 488, 492 (5th Cir. 2011). Because Cluff is proceeding pro se, this Court should review her claims liberally and "hold [her pleadings] to less stringent standards than formal pleadings by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, she "may not collaterally attack her voluntary and intelligent guilty plea." *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991).

To be valid, a guilty plea needs to be both knowing and voluntary, *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986), which means that "a defendant must have full knowledge of what the plea connoted and of its consequences." *United States v. Lord*, 915 F.3d 1009, 1016 (5th Cir. 2019) (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). "Solemn declarations in open court carry a

strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that [s]he is waiving or if [s]he has such an incomplete understanding of the charges against h[er] that h[er] plea cannot stand as an admission of guilt." *Lord*, 915 F.3d at 1016 (quoting *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). "An accused's mere 'understanding' that [s]he will [receive] a lesser sentence . . . will not invalidate a guilty plea." *Smith*, 786 F.2d at 701 (citing *Self v. Blackburn*, 751 F.2d 789, 792-93 (5th Cir. 1985); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981)). However, "w[h]ere an *actual promise* has been made . . ., federal habeas relief is awardable if the petitioner 'prove[s] "(1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise."'" *Id.* (quoting *Self*, 752 F.2d at 793 (quoting *Hayes v. Maggio*, 699 F.2d 198, 203 (5th Cir. 1983))). Cluff's "prior attestation of voluntariness is not an absolute bar to his contestations here, although it imposes on h[er] a 'heavy burden.'" *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979) (quoting *Barnes v. United States*, 579 F.2d 364 (5th Cir. 1978)). Cluff "must show that her plea was 'so much the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *United States v. Diaz*, 733 F.2d 371, 374 (5th Cir. 1984) (quoting *Blackledge*, 431 U.S. at 75).

Here, by signing the plea agreement (Document No. 46, p. 19) and the Addendum (Document No. 46, p. 20), Cluff acknowledged and agreed to the following: she was informed of the facts that led to the charges in the first place (Document No. 46, p. 7-12); she knew she was waiving her right to appeal or collaterally attack her conviction and sentence, but was not waiving her right to raise a claim of ineffective assistance of counsel (Document No. 46, p. 4-5); she knew that the parties had

agreed to a maximum sentence of up to 120 months imprisonment and that she could seek a sentence below the agreed 120 months.  (Document No. 46, p. 2); she knew the rights she was surrendering (Document No. 46, p. 7); she acknowledged that no promises were made to her, other than those in the plea agreement (Document No. 46, p. 18); and she acknowledged that she consulted with her attorney, that she fully understood the agreement and her rights, and that she freely plead guilty and voluntarily signed the agreement (Document No. 46, p 20). Therefore, Cluff had full knowledge of what the plea entailed and its consequences. *See Lord*, 915 F.3d at 1016.

Furthermore, at her Rearraignment Hearing, Cluff testified to the following: that she discussed the Indictment with her counsel and was fully satisfied with her counsel's advice and representation, that she understood what she agreed to in the written Plea Agreement, that the written Plea Agreement contained all the promises or assurances that had been made to her that persuaded her to plead guilty, that she was not forced or coerced to plead guilty, and that she plead guilty because she was guilty. (Document No.76, p. 5, 8-17. The Court also went over the maximum penalties Cluff was facing, the essential elements of the crime, and the rights she was waiving, all of which he solemnly declared that she understood. (Document No. 76, p. 15-28). The record shows that she solemnly declared that she understood "the nature of the constitutional protection[s] that [s]he [was] waiving" and that [s]he fully understood "the charges against h[er]." *See Lord*, 915 F.3d at 1016; *Blackledge*, 431 U.S. at 74. Her claim that she believed she would receive leniency and a sentence of less than 120 months, is undermined by the contemporaneous record.  *See Smith*, 786 F.2d at 701. The written Plea Agreement provided that Cluff could *argue* for a sentence of less than 120 months. The written Plea Agreement put a cap on her sentencing exposure only.  Cluff was advised that a presentence report would be prepared, and that the Court could not tell what her sentence would be,

12

but that parties would be given the opportunity at sentencing to make any objections to the presentence report. (Document No. 76, p. 20-23). Given her sworn statements that she was not induced to sign the guilty plea on the premise that, by doing so, she would receive leniency based on her substantial voluntary restitution payment, her claim that her plea was not knowing and voluntary fails, and her claim is barred by her waiver of her right to collaterally attack her conviction.

Cluff also raises a claim of ineffective assistance of counsel. The Government has responded and argues that counsel's performance did not fall below that of *Strickland v. Washington,* 466 U.S. 668 (1984). The Magistrate Judge agrees.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

In *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court held that the Sixth amendment right to counsel extends to the plea-bargaining process. The Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.

*Id.* at 58. With respect to the prejudice inquiry in the guilty plea context, the Supreme Court in *Hill*

opined that a defendant must show"that there is a reasonable probability that, but for counsel's

errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."

*Id.* at 162-63.  During the 2017 term, the Supreme Court in *Lee v. United States*, ___U.S.___, 137

S.Ct. 1958, 1966 (2017), instructed that such a review should be "a case-by-case examination of the

totality of the evidence"  and to look at contemporaneous evidence.  *Id*. at 1966.  The Supreme

Court wrote:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559
> U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and the strong societal
> interest in finality has "special force with respect to convictions based on guilty
> pleas."  *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed. 2d
> 634 (1979).  Courts should not upset a plea solely because of *post hoc* assertions
> from a defendant about how he would have pleaded but for his attorney's
> deficiencies.   Judges should instead look to contemporaneous evidence to
> substantiate a defendant's expressed preferences.

*Id.* at 1967.

 "We will not find inadequate representation merely because, with the benefit of hindsight,

we disagree with counsel's strategic choices."  *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir.

1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).  Conclusory allegations of

ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition.

*Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard*

*v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to ineffective assistance of counsel claims, the Court in *Harrington v.  Richter*,  562

U.S 86, 131 S.Ct.  770, 778 (2011) observed that "[t]here are, [ ] 'countless ways to provide effective

assistance in any given case.  Even the best criminal defense attorneys would not defend a particular

client in the same way.'  Rare are the situations in which the 'wide latitude counsel must have in

14

making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689).   As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789.  "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791.  Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S. Ct. at 791 (emphasis added).

Cluff alleges that counsel was ineffective for failing to advise her about specific acts related to the voluntary transfer of assets.  Cluff claims that she was never told by counsel that the interior furnishings in her residence were to remain undisturbed, and that doing anything with the furnishings before her home was sold could result in a two level enhancement for obstruction of justice.  According to Cluff, she gave furnishings and personal property to victims of Hurricane Harvey and sold a bedroom set.  She maintains that she was under the impression the house had to be empty when it sold.

Here, the contemporaneous record shows that counsel filed written objections to the PSR relating to the obstruction of justice enhancement and argued in favor of Cluff receiving acceptance of responsibility.  In addition, counsel filed a Sentencing Memorandum arguing for a sentence of 36 to 48 months.  Cluff confirmed at the June 15, 2018, sentencing that she had read and understood the PSR and had no other objections than those raised by counsel.  (Document No. 90, p. 5-6).

15

While counsel at the sentencing hearing, withdrew the objection relating to obstruction of justice, the contemporaneous record shows that counsel argued that Cluff should be given three points for acceptance of responsibility and a sentence less than the agreed cap of 120 months. (Document No. 90, p. 39, 126-133). To the extent that Cluff suggests that the obstruction of justice enhancement was based only on the furnishings sold from the home, the record shows otherwise. The obstruction enhancement was based on the conversation between Cluff and Dwayne Alexander. Dwayne Alexander testified about his conversation with Cluff. Dwayne Alexander summed up the conversation as follows: "she was basically telling me to tell the FBI that I paid her back in cash. Saying that would have been a lie." (Document No. 90, p. 43). The arguments relating to the furnishings were relevant to the amount of cooperation by Cluff.

> Mr. Cogdell: Yes, ma'am.  The only one, I think, that I'd like to spend any time on is the acceptance of responsibility.  And I understand the notion that if there is obstruction of justice—
>
> The Court: Obstruction of justice, yes.
>
> Mr. Cogdell:  —it is certainly more difficult to obtain acceptance of responsibility. I get that.  And, indeed, I pulled off the obstruction – I withdrew my obstruction objection before we started this hearing.  But with 3E1 states that acceptance of responsibility may be granted even when the instruction enhancement applies in extraordinary cases. This case is absolutely an extraordinary case. And under 3E1.1, the commentary note provides a nonexhaustive list of indicators that suggest that Ms. Cluff has accepted responsibility.
>
> One, admitting the conduct comprising the offense of the conviction, she's done that. She has pled guilty.  Withdrawal from criminal association or resignation of the office held during the offense, which is exactly why I was going there with Mr. Wynne.  She withdrew from the Varnett School associations and resigned.  She voluntarily surrendered to authorities.  She voluntarily surrendered to the authorities promptly after the indictment.   A voluntary payment of restitution prior to adjudication of guilt.  She's paid 1.6 before she was ever charged and intends to pay the entire amount once the house is sold.
>
> So, while I hear the probation department on the general notion that it's harder for

a person to obtain acceptance where there is obstruction, this is by definition, I think, the exceptions or the extraordinary case that 3E1 recognizes and she should be entitled to acceptance of responsibility.

The Court: So, your argument, if I understand it correctly, is that even though you concede that she's obstructed justice, that she should be given acceptance because she's done some other things that are – would indicate that she has accepted responsibility?

Mr. Cogdell: Well, to be clear, she obstructed before she was ever charged.

The Court: Right.

Mr. Cogdell: And yes, I think the idea that she indicated she pled guilty quickly, that she resigned, that she paid 1.6 million back, all of those things are exceptions. And, again, without getting on my high horse, I've never had a client pay $1.6 million in restitution before they're ever charged. I get it, that doesn't absolve the guilt, but I think it puts her in a rather extraordinary case, and that is exactly the sort of conduct under 3E1, that the Court should allow her to be recognized for acceptance of responsibility even though there was a preexisting obstruction issue before she was ever charged. You follow me?

The Court: I do, I follow you.

Mr. Cogdell: I'm not sure I like that smile.

The Court: Well, I mean, if I were to follow your argument, two guys—two bank robbers get caught and they get put in the paddy wagon at the same time and one of them says to the other one, if you tell—if you indicate that I'm part of the bank robbery, I'm going to have you killed, but then after he's talked to hie lawyer, he confesses, And I was part of it and all of that kind of thing—

Mr. Cogdell: Well, that's a different fact pattern than we have here.

The Court: Well, it's a very different fact pattern, but it's the same idea. Before you charge you can obstruct justice.

Mr. Cogdell: No question. No question.

The Court: —and then after the charge and you've got– you're lawyered up, then you realize the obstructing justice thing is not such a great idea. It's not going to do me any good. So, I'm going to just completely start being Mr. Goody-Two-Shoes.

Mr. Cogdell: Well, to be clear, it's not my argument. It's 3E1.

Mr. Ollison: And even more than that, Your Honor, in defense's response, they indicated that the phone call never happened–

Mr. Cogdell: I wasn't aware that that –

Mr. Ollison:  – when, in fact it did.  And they never corrected that.  So, you know, I don't think Ms. Cluff has done anything that– other than to plead guilty, that I'm aware of, that shows her cooperation.  And even after the plea, if we want to talk about cooperation, as I filed in our motion for dissipation of assets, after she pled guilty and said that she would do everything in her– to cooperate with the government, she sold, gave away, or we don't know what happened to assets or furnishings in the house.  And other than the sale of the house, they've done nothing to assist the government.  So, Mr. Cogdell's admonition about cooperation and somehow trying to dovetail that to overcome the obstructive behavior, I think it without merit.

Mr. Cogdell: First off, there was no prohibition in the plea agreement from them selling or giving away furniture.  What we agreed to in the plea bargain was that they would attempt to sell the house.  They have been attempting to sell the house.  They brought it down from a $3.5 million asking price to – after we met with the Cluffs at Mr. Ollison's office, to a $2.5 million house.  There's an offer on the house currently, which is one of the reasons I wanted to push this back – let me finish, Quincy– one of the reasons I wanted to push this back for a couple of weeks, and you overruled that request, which I get, I understand we need closure on this, but the point being, there is an offer on the house for 1.3– I'm sorry, 1.4.  That gentleman has said he will meet or beat any other offers.

Mr. Ollison: Your Honor, I'm going to have to object to this.  What he's saying is not relevant to the point of them not cooperating with the government, because they–

Mr. Cogdell: You can't—

Mr. Ollison:  – you know, she–

Mr. Cogdell:  —say we haven't done anything to try to sell the house, including–

Mr. Ollison: I—

Mr. Cogdell: – to what we've done.

Mr. Ollison: Well, but I"m talking about– I'm talking about taking assets from the estate at a time when you yourself wrote me a memo based on our agreement that the house was furnished, when, in fact, it was not.

And, so, Your Honor, whether the house sells or not, and I think we're off on a rabbit trail here from the real issue, the Cluffs have substantial other assets that they could have liquidated and given to the government if they truly wanted to be cooperative, and they have not done that.

Mr. Cogdell: Because they're trying to sell the house. And if Mr. Ollison would let me finish, it's not a rabbit trail just because he doesn't want to go down it. There's an offer on the house for 1.4. The same buyer was at the house yesterday or the day before with ten people, his whole entire family. Based upon my conversations with the real estate agent, they expect to get a significantly larger offer on Monday or Tuesday of next week, ideally in the 2, 2.2 range, which would all but effectuate restitution. So, Mr. Ollison to say they've done nothing. For God sakes, they paid 1.6. They're trying to sell their house. I'd say that's a little more than nothing.

Mr. Ollison: Well, Mr. Cogdell came over to my office one day and said, Well, what's the loss? And at that time I said around a million and a half. And then they come up with a million and a half. And I agree that they did that. But it turns out that the loss was 2.4 million in fraud—

Mr. Cogdell: We're stipulating to the loss.

Mr. Ollison: –plus the amount owed to the IRS. So, between that time period and now, they've done nothing to assist the government. This—the plea agreement on page 12, Paragraph 13 says, "The defendant agrees not to dispose of any assets or take any action that would affect a transfer of the property in which she has an interest, except without the prior approval of the United States." And it's clear that the Cluffs disposed of assets contrary to the plea agreement. But I'm not asking that the plea agreement be breached – or has been breached in any way. I'm willing to move forward with it. But I just don't think that the Court is getting a fair representation of the cooperation of the Cluffs.

Mr. Cogdell: We can go back and forth all day on it, Your Honor.

The Court: Yeah, we could, and I don't want to do that.

Mr. Ollison: Right.

The Court: But I find —I'm going to overrule your objection to the not giving Ms. Cluff her acceptance of responsibility.

(Document No. 90, p. 126-133). The contemporaneous record clearly shows that counsel, in fact, argued for acceptance of responsibility, and made *all* the arguments urged by Cluff. The

Government argued against Cluff receiving three points for acceptance of responsibility and in favor of the two level enhancement for obstruction of justice. The Court found that obstruction enhancement was appropriate and that Cluff had not accepted responsibility.  Simply because the Court was unpersuaded by the arguments raised by counsel concerning the amount of cooperation by Cluff, and found the obstruction of justice enhancement appropriate, does not mean that counsel's performance was deficient within the meaning of *Strickland*.  *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).  Cluff's ineffectiveness of counsel claim fails as a matter of law.

### III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Marian Annette Cluff's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 121) be DENIED. It is

ORDERED that Movant's Motion to Appointment Counsel and Motion to Proceed *In Forma Pauperis* (Document Nos. 225 and 229) are DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections

shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 31st day of MARCH, 2021.


Frances H. Stacy
United States Magistrate Judge