United States District Court
Southern District of Texas
**ENTERED**
November 02, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* | § § § | |
| v. | § § | CRIMINAL ACTION NO. 4:15-CR-377-1 |
| MARIAN ANNETTE CLUFF, *Defendant.* | § § § | |

## ORDER

Before the Court is Defendant Marian Annette Cluff's ("Cluff") Emergency Motion for Compassionate Release under the First Step Act of 2018. (Doc. Nos. 240, 241). The Government has filed a response in opposition, which included Cluff's relevant medical records. (Doc. No. 247). Cluff has also filed a reply. (Doc. No. 254). The Government does not claim that Cluff has failed to exhaust her administrative remedies. In fact, it concedes 30 days have elapsed since Cluff's last request was made to the warden in charge of her facility. (Doc. No. 247 at 11). Consequently, this Court will proceed on the merits of the motion.

### I.  Background

Cluff and her husband/co-conspirator participated in an extensive embezzlement scheme. On August 25, 2017, Cluff pleaded guilty to 2 counts of a 23-count indictment. She pleaded guilty to conspiracy to commit tax evasion (Count One) and mail fraud (Count Two). On June 15, 2018, she was sentenced to 60 months as to Count One and 120 months as to Count Two, each count to run concurrently.

By the Court's estimation, Cluff has now served approximately 35% of her 10-year sentence. With good time credit, she is currently scheduled for home detention on October 1, 2026 with a projected release date of April 1, 2027. Cluff's reply brief estimated that, based upon a full reward of good time, she has served more than 45% of her sentence. Her motion for

compassionate release is based on: 1) her assertion she is not being provided sufficient medical care; 2) her assertion that she is at a higher risk from the COVID-19 virus; and 3) that her husband is elderly and she is the only possible caregiver.

## II. Discussion

With regard to her lack of access to medical care, Cluff has not shown that she has been denied essential care; nor has she proven that she has been in any way harmed. Her main complaint focuses on her access to Dr. Marcel Lechin, Cluff's primary cardiologist. Cluff has a history of hypertension, atrial fibrillation, bradycardia and her echocardiogram revealed mild to moderate mitral and aortic insufficiency, for which she has been given medications. The primary complaint is that there was a gap in access between September 2019 and March 2021. Normally she would have been seen in April and/or October of 2020. Obviously, this gap coincided with the nationwide COVID-19 shutdown. She has been on regular visits since March of 2021. Importantly, her June 2021 studies revealed an improvement in her condition. She is clinically stable. She ambulates without assistance and is able to perform all her daily life activities. While all heart problems are serious to an extent, the Bureau of Prisons does not seem to be exercising any lack of care or attention. While there was certainly a gap between visits during the COVID-19 lockdown, those gaps in health care visits occurred in the non-prison population as well.[1]

The COVID-related allegation in Cluff's motion is based upon the argument the Court needs to consider the dangers of COVID-19 to an inmate population, and especially as it might affect an inmate of her age with her health history. Cluff is 73 years-old and has high blood pressure and certain heart-related conditions. Her age and these conditions certainly enhance the likelihood of more serious consequences should she contract COVID-19.

---

[1] This Court is denying this motion at this time, but it remains concerned about the level of follow-up medical care being provided to Cluff. While all facets of medical care have been strained since the outbreak of COVID-19, the BOP has had adequate time to adjust to the situation. Therefore, there should be no future gaps in appropriate providing cardiac care to Cluff.

Cluff is currently housed at the Bryan FPC facility. The current published statistics for that facility seem to change rapidly. In mid-August, only one inmate had tested positive for COVID-19 (out of a total inmate population of nearly 500). By the time Cluff filed her reply toward the end of September, three staff members had tested positive. Currently, two inmates and two staff members are positive for the disease.[2] There have been no deaths at Bryan over the length of the pandemic. All staff members and virtually all of the inmate population at Bryan have now been inoculated against COVID-19.[3] Cluff, herself, was vaccinated earlier this year. The inoculation program is ongoing.

The Court assumes for purposes of this motion that Cluff's circulatory problems (especially her hypertension) would be recognized by the CDC as a comorbidity for the COVID-19 virus. Being over 70 and having high blood pressure and other related heart problems would increase the chances of serious COVID-19 side effects requiring hospitalization.[4] Nevertheless, virtually all of the individuals at her current facility have been vaccinated (according to all governmental information sources), so Cluff's chances of contracting COVID-19 are therefore minimal. Moreover, she requests relief to return to her home in Polk County, Texas. The New York Times reports the vaccination rate in Polk County to be 38%. The State of Texas has a reported COVID-19 vaccination rate of just over 70%.[5] The facility in which Cluff is housed has a vaccination rate of over 99%, plus it limits access. Thus, at the present time, the argument could

---

[2] According to the BOP's new Operational Levels, Bryan FPC is categorized as a "Level 3 Facility" because it meets one or more of the following criteria: medical isolation greater than or equal to 7%; a vaccination rate of less than 50%; or community transmission greater than or equal to 100 per 100,000 (or .1%) over the past 7 days. As noted, there are 4 active cases of COVID-19 at Bryan FPC, which, due to the relatively small inmate population of 500 inmates, makes the transmission rate 1%. The Court notes that, according to the BOP website, 78 facilities out of 98 facilities for which the Operational Levels are listed are categorized as Level 3, 18 facilities are categorized as Level 2, and only two facilities are categorized as Level 1.
[3] *See* Bureau of Prisons (2021). COVID-19 Vaccine Implementation. https://www.bop.gov/coronavirus/
[4] *See* Centers for Disease Control and Prevention (2021). COVID-19 and People with Certain Medical Conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[5] This figure is the rate published by the Texas Department of State Health Services for 12-year-olds and up. The New York Times places the fully vaccinated rate of 12-year-olds and above for Texas as 61%.

be made that Cluff is less exposed to COVID-19 where she is than if she were to be released.

Currently, the more intriguing argument is that Cluff needs to be released to be the caregiver to Mr. Cluff. He is 73 years-old, and his primary health problems appear to be related to diabetes. The Court, for purposes of this motion, will assume that Mr. Cluff is not fully disabled, but that he is experiencing problems which could be alleviated (at least to some degree) by a caregiver. That assumption does not, however, mean that caregiver has to be Mrs. Cluff. The uncontested evidence is they own over $1 million in real property, seven vehicles, and receive close to $8,000 a month in retirement income. Consequently, there are funds available to hire a caregiver should Mr. Cluff or their grandchildren need assistance.

### III. Pertinent Law

Section 3582(c)(1)(A)(ii) requires any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). The Government has argued that the policy statement allows a reduction for "extraordinary and compelling reasons," only if the reasons are "consistent with this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(1)(A), (3) (U.S. SENTENCING COMM'N 2018). Application Note 1 explains that "extraordinary and compelling reasons exist under any of the circumstances set forth below." *Id.* § 1B1.13 cmt. n.1. These circumstances are: (a) suffering from a terminal illness or other medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (b) being at least 65 years old and "experiencing a serious deterioration in physical or mental health because of the aging process" and having "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less"; (c) the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the

4

only available caregiver for the spouse or registered partner"; or (d) "[a]s determined by the Director of the Bureau of Prisons, . . . an extraordinary and compelling reason other than, or in combination with, the [above] reasons." *Id.* § 1B1.13 cmt. n.1. Cluff does not fall within the auspices of subsection (a)-(c), so the only basis of her claim can be subsection (d), which only applies if extraordinary and compelling circumstances exist.

In the past, courts have differed on whether Application Note 1 applied to the consideration of prisoner motions by district courts after Congress passed the First Step Act. *Compare United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court."), *with United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (the district court did not err by considering § 1B1.13 commentary when determining whether an "extraordinary and compelling reason" existed that warranted a sentence reduction).

The Fifth Circuit has now put this debate to rest by holding that district courts are not bound by either the policy statement or the commentary when addressing a prisoner's motion under § 3582. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). A district court is only bound by § 3582(C)(1) and § 3553(a). *Id.* Consequently, the Court will analyze this motion using those constraints. The Court, however, points out that if a prisoner moves for relief under § 3582(c)(1) as Cluff has, and if she does not qualify under § 3582(c)(1)(A)(ii), then she must still provide extraordinary and compelling reasons that warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Thus, in Cluff's case, the standard for compassionate leave is "extraordinary and compelling." *Id.* Congress does not define extraordinary and compelling and neither has the Sentencing Commission since the passage of the First Step Act.

In the instant case, Cluff is 73 years-old and she does not voice any specific health complaints that are not being treated by the BOP-provided doctors. While her age and hypertension, and perhaps her circulatory status, increase the risk of severe health problems if she is infected with COVID-19, the BOP has made remarkable strides in protecting prisoners. Moreover, the vaccination program makes it less likely that COVID-19 will present a problem to her in the near future. (In fact, it could be argued that, if the federal government's position on vaccines is accurate, she is currently safer in jail than in Polk County.)

The real legal question is whether this combination of facts equates to an "extraordinary and compelling" reason for compassionate release. The Court finds they do not. While this Court emphasizes that it will reconsider this ruling should her access to proper care by a cardiologist be denied, based upon the evidence provided the Court finds there are no extraordinary or compelling circumstances to release Cluff at this time.

### III. Conclusion

The Court denies Cluff's Emergency Motion for Compassionate Release under the First Step Act of 2018. (Doc. Nos. 240, 241).

SIGNED at Houston, Texas this 1st day of November, 2021.

Andrew S. Hanen
United States District Judge